IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| STEPHANIE M. LYLE, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-386-S-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |

## Introduction

Currently pending before the Court is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Stephanie Lyle ("Petitioner") on September 12, 2008.  The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR").  For the reasons that follow, the Court will affirm the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on January 5, 2004, alleging disability due to fibromyalgia, depression, and post traumatic stress disorder.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.  Administrative Law Judge ("ALJ") Lloyd Hartford held a hearing on January 25, 2006, which was continued until June 21, 2006, after which he

concluded in his Decision dated November 16, 2006, that Petitioner was not disabled. (AR 15-25.)  The Appeals Council denied Petitioner's appeal of the ALJ's decision on August 6, 2008. (AR 4-6.)  Petitioner appealed this final decision to the Court, which has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the most recent 2006 hearing before ALJ Hartford, Petitioner was thirty-nine years of age.  She has a high school education and a college degree.  Her past relevant work includes clerk-typist, aircraft mechanic, general office clerk, and receptionist.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of December 31, 2000.  At step two, it must be determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's major depressive disorder, post-traumatic stress disorder ("PTSD") and fibromyalgia "severe" within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found Petitioner was unable to perform any past relevant work as either a clerk typist, aircraft mechanic, general office clerk, or receptionist.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.  At step five, the ALJ found Petitioner could perform unskilled medium work activity.  Based on the foregoing, ALJ Hartford issued a finding of not disabled.

**III.**
**Standard of Review**

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v*

*Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount

of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

     The Court should not disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist which supports the petitioner's

claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457

(9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial

evidence, will be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is

substantial evidence to support the decision of the Commissioner, the decision must be upheld

even when the evidence can reasonably support either affirming or reversing the Commissioner's

decision, because the Court "may not substitute [its] judgment for that of the Commissioner."

*Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

     In reviewing a case under the substantial evidence standard, the Court may question an

ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v.*

*Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of

subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled

role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v.*

*Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

     Petitioner believes the ALJ erred at the fourth and fifth steps of the sequential evaluation

process. Specifically, Petitioner maintains that ALJ Hartford erred at step four because he found

Petitioner's allegations not to be credible.  At step five, Petitioner contends that the ALJ's failure to procure vocational expert testimony was in error.  The Court will address each of Petitioner's arguments in turn.

**A. Petitioner's Credibility**

Examining Petitioner's testimony, the ALJ found that, although Petitioner has a history of fibromyalgia, major depression, and PTSD, her statements concerning the intensity, persistence, and limiting effects of these impairments were not entirely credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's

credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court should not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ discredited Petitioner's testimony regarding the limitations imposed upon her by her fibromyalgia, severe depression and PTSD because the ALJ found that Petitioner's allegations were not supported by the medical records, the extent of her daily activities, and the testimony of the medical expert at the hearing. In response, Petitioner contends that the ALJ erred in his assessment of the lack of a disability opinion from the Veterans Administration ("VA"), his failure to  sufficiently support his conclusions, his analysis of Petitioner's daily activities, and his assessment of Petitioner's testimony regarding her physical and mental limitations.

First,  Petitioner argues that the ALJ erred in his analysis of the VA's failure to provide a

disability opinion. Petitioner contends that the ALJ interpreted the lack of an opinion in the record from the VA as an indication that Petitioner was not disabled. According to the Petitioner, the lack of an opinion is not significant because the VA refuses to provide such evaluations. The Court finds that, to the extent the ALJ interpreted the failure of the VA to provide an opinion regarding Petitioner's disability as an indication that Petitioner was not disabled, that interpretation was in error. However, the ALJ provided other clear and convincing reasons to find Petitioner not entirely credible that are supported by substantial evidence in the record.

Petitioner also contends that the ALJ failed to specity evidence in the record that contradicted her assertion of pain related to her fibromyalgia. At the hearing, Petitioner testified that since about 2004, she has suffered from constant fibromyalgia pain, experiencing pain at a level 9 on a scale of 1 to 10, at least twenty days per month. Petitioner testified that on those days, she is in extreme pain and spends most of her day in bed reading. Further, she testified that she has to lie down two to three hours every day for 30 minutes at a time, can lift only 10-25 pounds, sit only 20 minutes at a time, stand only 30 minutes at a time; and, lumped together in an 8-hour day she felt she could sit 2 to 3 hours, stand two to three hours, and would need to lie down for the rest of the time. (AR 623-624.)

The ALJ discredited Petitioner's claims regarding the severity of her pain and her physical limitations based on their inconsistency with Petitioner's medical records and her daily activities. Despite Petitioner's contentions, the Court finds that the ALJ's conclusion is supported by substantial evidence as outlined below.

Petitioner has complained of pain and discomfort relating to her fibromyalgia since her

alleged onset date of December 31, 2000;  however, the medical records do not support

Petitioner's contention that, since 2004 she has suffered pain at a level 9 twenty days per month.

(AR 639-640.)  The Court notes that there are very few records directly discussing Petitioner's

fibromyalgia pain. The records do indicate that the fibromyalgia was potentially service

connected, and that its severity fluctuates especially when Petitioner is experiencing stress.  This

fluctuation is reflected in Petitioner's reports of her pain level between 2002 and 2006. (AR 449.)

However, Petitioner's pain reports do not support her testimony that she was experiencing pain at

a level 9 twenty days per month.

In addition to these pain level reports that contradict Petitioner's testimony, the ALJ
noted that records of Petitioner's frequent treatment indicate that Petitioner was doing well,

As noted above, Petitioner contends that her pain became more severe around 2004.

However, from approximately May 2004 through December 2005, the only medical reports

concerning Petitioner's pain level indicate that she was experiencing pain between levels 2 and

8.[1]  (AR 461, 400.)  In 2006, the medical records indicate that her pain varied between levels 3

and  9, with the worst being reported by Petitioner when she was in the hospital in January of

2006 for major depression disorder with the pain resolving to a level 3 upon discharge.  (AR

514, 517, 545.)  These more recent treatment notes are consistent with the Petitioner's reports of

pain prior to 2004.  During her hospitalization for depression and PTSD in October of 2003,

Petitioner reported her highest level of pain at a level 7; however, upon discharge, Petitioner's

mental state was greatly improved and she reported a pain level of 3. (AR 156, 150,143).

In addition to these pain level reports that contradict Petitioner's testimony, the ALJ

noted that records of Petitioner's frequent treatment indicate that Petitioner was doing well,

---

[1] However, it is unclear from the medical records in October and December of 2004
whether Petitioner's reported pain levels of an 8, 4, and 5 were related to her chief complaint of
right ear pain or her fibromyalgia which was also mentioned in the records.  (AR 494, 486, 482.)

contain no descriptions or complaints by Petitioner of a need to lie down every thirty minutes, and contain no recommendations regarding her alleged need to lie down most of the day or lifting restriction.  This conclusion is supported by Petitioner's testimony at the hearing that, although her physicians told her to engage in physical activities to the extent she was comfortable, the physicians did not place any specific limits upon her physical activities due to her fibromyalgia.[2]   Instead, the treatment notes indicate that Petitioner was to remain active and exercise regularly for her pain and that, even in 2004 when she allegedly was experiencing increased symptoms, her fibromyalgia pain was under control.  (AR 337.)

The ALJ also cited to the VA determination in July of 2005 finding that Petitioner was only 20% disabled due to her fibromyalgia to support his conclusion that Petitioner's allegations regarding her functional ability were not fully credible.  As noted by Respondent, great weight must be given to the VA's disability rating.  *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9 th Cir. 2002).  Petitioner did not appeal the 20% disability rating for her fibroymalgia and the rating is consistent with the ALJ's conclusion that Petitioner is somewhat limited by her pain but that her allegations regarding the extent of her functional limitations are not fully credible.[3]

---

[2] The Court notes that although the ALJ chose not to fully adopt the Residual Functional Capacity recommendation of Dr. Leslie Arnold, Dr. Arnold's report also indicates that Petitioner's limitations were not as excessive as claimed by Petitioner.  Specifically, Dr. Arnold's RFC assessment, noting that Petitioner was limited by pain fluctuating between levels 3 and 7 on a scale of 0-10, concluded that Petitioner could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk or sit for about 6 hours in an 8-hour workday, had unlimited ability to push and or pull as well as no established postural or manipulative limitations based upon her condition.  The only environmental limitation found by Dr. Arnold was the need to avoid concentrated exposure to vibration.  (AR 309-316.)

[3] In Petitioner's brief, Petitioner notes that in January 2007, Petitioner was also given an additional 30% service connected disability for depression by the VA.  However, this information is not in the record and cannot be considered by the Court.

MEMORANDUM DECISION AND ORDER - 9

The ALJ also found that Petitioner's daily activities, including her ability to obtain a
college degree in 2003 while suffering from fibromyalgia, severe depression, and PTSD
contradicts her alleged limitations.  Petitioner argued that attending  school was not comparable
to working full time due to the flexibility involved in attending school.  However, even if the two
activities are not comparable, Petitioner's ability to attend school full time, perform well, and
successfully receive her bachelor's degree while suffering through periods of increased
symptoms, as identified by Petitioner in her brief, is significant because it demonstrates her
ability to complete stressful daily activities.[4] (Petitioner's Brief p.5, Docket No. 15.)   Therefore,
the Court finds that the ALJ's conclusion that Petitioner's daily activities contradicted her alleged
limitations is based on substantial evidence.

With respect to Petitioner's non-exertional limitations, the ALJ found that Petitioner was
not entirely credible because her  severe depression and post traumatic stress disorder were
generally well controlled and did not impair Petitioner's ability to work.  The ALJ based this
determination on Petitioner's medical records and the testimony of Dr. Marian Martin, a clinical
psychologist.  Petitioner argues that the record of Petitioner's hospitalizations demonstrates that
Petitioner had severe functional limitations at various "snapshots in time" which would preclude
all work.  However, Dr. Martin testified that, although the claimant has had brief hospital stays,
generally her symptoms were fairly well managed with her medication and outpatient treatment.
Based upon the medical records and Petitioner's ability to attend college for three years on a full
time basis, Dr. Martin concluded that between 2000 and 2004, Petitioner's daily activities were

---

[4] As the ALJ noted, Petitioner offered no explanation at the hearing, "credible or
otherwise, as to how she could attend college full time for three years if she were actually
experiencing level 9 pain some 20 days a month or spending the day lying in bed due to extreme
pain." (AR 23.)

only mildly limited, her social functioning was not limited, and her concentration, persistence

and pace were mild to moderately limited depending on the presence of her PTSD and

depression symptoms. (AR 682-685.)  Further, Dr. Martin testified that, except during the

hospitalization in 2006, Petitioner had no limitations on daily activities, social functioning or

maintaining concentration, persistence, and pace between the end of 2004 and the date of the

hearing.  (AR 686.)  Ms. Martin's opinions were not contradicted.  Based on the foregoing, the

ALJ's conclusion regarding Petitioner's credibility with respect to her non-exertional limitations

is supported by substantial evidence.

As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel*, 172

F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the

ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*,

278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the court will not

substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but

whether the assessment is sound.   Here, there is substantial evidence in the record to support the

ALJ's finding that Petitioner was not fully credible, as the ALJ took into consideration the

objective medical evidence and inconsistencies between the pain Petitioner complained of and

her daily activities.

**B.  Vocational Expert Testimony**

Petitioner contends that the ALJ erred in failing to take testimony from a vocational

expert at Petitioner's hearing and in his application of the Medical Vocational Guidelines ("the

grids") to determine Petitioner's disability.

In meeting the burden under step five, the Commissioner may *either* rely upon the testimony of a vocational expert *or* refer to the grids. *Burton v. Massanari*, 268 F.3d 824, 828 n.1 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  However, an ALJ may not rely on the guidelines when the claimant has significant non-exertional impairments. *Osenbrock v. Apfel,* 240 F.3d 1157 (9th Cir. 2001).  An ALJ's use of the grids is permissible where the grids "completely and accurately represent a claimant's limitations, such that a claimant is able to perform the full range of jobs in a given category." *Tackett*, 180 F.3d at 1102; 20 C.F.R. 404.1520, 404.1560(b)(3).  "However, the fact that a nonexertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's nonexertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*.

Petitioner contends that because Dr. Martin testified that she had mild or moderate limitations in concentration between 2000 and 2004, reliance upon the grids was in error. Specifically, Petitioner argues that Dr. Martin's testimony that Petitioner would have been limited to low stress, non-demanding types of jobs during this same time frame indicates that Petitioner would have substantial nonexertional limitations.  Dr. Martin did testify to this effect; however, upon learning that Petitioner attended college full time during this same time period, Dr. Martin stated: "I would have to revise my opinion on that in terms of, you know, she probably could have handled at least a regular job I guess, it wouldn't have to necessarily be totally low stress." (AR 691.)  Thus, Dr. Martin's testimony does not contradict the ALJ's determination that Petitioner's mild to moderate limitation in concentration impacts Petitioner to the extent she can perform only unskilled work.  Thus, the ALJ's conclusion that Petitioner's

mental limitations had "little or no effect on the occupational base of unskilled medium work" is supported by substantial evidence and was not the product of error.  (AR 25.)

Further, as the ALJ did not err by discrediting Petitioner's testimony regarding her limitations due to severe depression, PTSD and fibromyalgia, the ALJ's conclusion that Petitioner could perform unskilled medium work is based on substantial evidence and the Court will not overturn it.  Based on the foregoing, the Court finds that the ALJ's application of the grids in lieu of obtaining vocational expert testimony at step five was not in error.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the Petition for Review be **DISMISSED**.



DATED: March 3, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge